UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:18-cr-00052-DBH |
| | ) | |
| ERIC MALMSTROM | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its counsel, Halsey B. Frank, United States Attorney for the District of Maine, and Craig M. Wolff, Assistant United States Attorney, respectfully submits the following memorandum in aid of sentencing in this matter.

## INTRODUCTION

The evidence at trial showed that the Defendant, Eric Malmstrom, made numerous harassing and threatening telephone calls and voicemail messages to Z.B., an employee of the Embassy of Sweden in Washington, D.C. Malmstrom told Z.B. on several occasions that he was going to slit her throat. He also told her that he was going to slit the throats of her young children. The jury found him guilty of three counts of transmitting threatening interstate communications, in violation of 18 U.S.C. § 875(c). The government respectfully submits that a sentence of 46 months imprisonment followed by three years supervised release is appropriate in this case.

## CONTEXT FOR SENTENCING

Malmstrom is facing a maximum sentence of five years imprisonment on each of the three counts for which he was found guilty. PSR ¶ 46. The Court may impose a term of supervised release of up to three years. PSR ¶ 49. A fine of up to $250,000 may be imposed, and a special assessment of $100 is mandatory. PSR ¶¶ 53, 54. Restitution is mandatory, but the victim has not submitted a restitution request. PSR ¶ 57.

## GOVERNMENT'S POSITION

### I. The PSR Properly Includes Information Pertaining to Malmstrom's Mental Health

Before addressing the calculation of Malmstrom's advisory sentencing guidelines and the appropriate sentence to be imposed, the government will first address his challenge to the inclusion of mental health information in the revised PSR. Inclusion of such information in the PSR is proper for several reasons.

#### A. This Court May Consider Otherwise Protected Mental Health Information as Part of the Presentence Process

First, even if some or all of the mental health information in the PSR is covered under the psychotherapist/patient privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1 (1996), the Court may consider such information as part of the presentence process. Rule 32 provides that the presentence report *must* contain information on the defendant's history and characteristics, including "any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional

treatment." Fed. R. Crim. P. 32(d)(2)(A)(iii). This mandate is consistent with the fundamental precept of federal sentencing:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661. This same precept is also set out in the Sentencing Guidelines, which provide that in making its sentencing decision, the Court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also United States v. Sklar*, 920 F.2d 107, 110 (1st Cir. 1990) (at sentencing, court may consider "virtually any dependable information" that is connected to the charged crime).

This broad mandate enables the Court to consider otherwise privileged mental health information during the sentencing process. The Fourth Circuit addressed this issue in *United States v. Wiggins*, 617 F. App'x 266 (4th Cir. 2015). As does Malmstrom here, the defendant in *Wiggins* argued that confidential documents protected by the therapist/patient privilege should not have been included in the PSR. *Id.* at 268. The court concluded that although such a privilege generally exists under federal law, the presentence investigation is not limited by traditional rules of evidence. *Id.* As a result, it concluded that the district court did not err by allowing the inclusion of two mental health reports in the defendant's PSR. *Id.* at 269; *see also United States v. Vestal*, 716 F. App'x 512, 514 (6th Cir. 2017) (citing 18 U.S.C. § 3661 in rejecting defendant's claim that district court abused its discretion in

3

obtaining private information related to his drug treatment status); *cf. Smith v. Stanton*, 545 F. Supp. 2d 302, 305–06 (W.D.N.Y. 2008) (rejecting § 1983 claim; "[c]ertainly the inclusion of plaintiff's psychiatric records in the PSR was legitimate, so that the sentencing court would have all relevant information before it when imposing sentence").

Including mental health records in the PSR also furthers the important interest of ensuring that Malmstrom receives proper medical and psychiatric treatment while incarcerated. The Bureau of Prisons (BOP) uses the PSR as an integral part of the inmate designation process. Part of this process includes the assessment of mental health information. As noted in the BOP Program Statement regarding Inmate Security Designation and Custody Classification, employees of the Designation and Sentence Computation Center (DSCC) "must attempt to ascertain whether an inmate requires medical or mental health evaluation or treatment. This information is ordinarily obtained from the Presentence Investigation Report or other source documents." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement P5100.08 at ch.3, p.7 (2006), https://www.bop.gov/policy/progstat/5100_008.pdf. BOP inmates are classified based on, among other things, the inmate's program needs, including medical or mental health treatment. *Id.* at ch.1, p.1. Mental health information is therefore crucial in "plac[ing] each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society." *Id.* at 1.

4

### B. Malmstrom Consented to the Release of Mental Health Information

Malmstrom's claim of privilege must also fail because he consented to the release of mental health treatment information at the outset of this case. He was arrested on March 9, 2018. On March 12, 2018, the day of his initial appearance, he signed several release forms that were provided to him by the United States Probation Office. Among them was an Authorization to Release Medical Information and Records. The form indicated that he was authorizing the release of any and all information contained in his medical record. He also specifically noted that he authorized "disclosure of information which refers to treatment or diagnosis of mental health."[1] The form specifically noted that the purpose of the release was "Presentence Investigation." He signed the form, and U.S. Probation Officer Timothy Duff witnessed it. The authorization was dated March 12, 2018.

In light of this release, Malmstrom cannot now claim that the mental health information in the PSR is privileged. The psychotherapist/patient privilege, like any, can be waived. *See Jaffee*, 518 U.S. at 15 n.14. Because he authorized release of his medical records to U.S. Probation, he waived any claimed privilege to those records.

### C. Malmstrom Cannot Meet His Burden of Demonstrating Privilege

Malmstrom's objection to the inclusion of mental health information in the PSR must also fail because he cannot demonstrate that much of the information falls within the scope of the psychotherapist/patient privilege. The proponent of any

---

[1] The government will seek to introduce copies of the releases Malmstrom signed as exhibits at the sentencing hearing.

privilege has the burden to show that the privilege applies. "[A] party asserting the psychotherapist-patient privilege must show that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment." *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 73 (1st Cir. 1999). As the proponent of the privilege, he has failed to meet his burden with respect to much of the information in the PSR:

With respect to information obtained from the U.S. Army, the results of Malmstrom's evaluation by a psychiatrist were shared with his commanding officer as part of separation proceedings. As a result, he cannot show that the communication was made confidentially. *See Barrett v. Vojtas*, 182 F.R.D. 177, 179 (W.D. Pa. 1998) (rejecting assertion of *Jaffee* privilege by police officer who was ordered to be examined by psychiatrists but knew results would be shared with superiors). In addition, at the time he was examined by the Army psychiatrist in July 1999, the psychotherapist-patient privilege was not applicable to the military. *See United States v. Rodriguez*, 54 M.J. 156, 161 (C.A.A.F. 2000) ("Post-*Jaffee* and prior to adoption of Mil.R.Evid. 513 [in October 1999], there was still no psychotherapist-patient privilege in the military because it was contrary to Mil.R.Evid. 501(d).").

Similarly, with respect to records obtained from the Maine Department of Corrections and the State of Maine Forensics Service, Malmstrom cannot show that this information, generated during the course of court-ordered examinations, was provided confidentially.

6

With respect to information provided by Malmstrom's family members, although some family members attempted to provide medical records to the Court, it does not appear that information from these records was included in the PSR. All that remains in the report are the family members' opinions regarding his past diagnoses. He has not shown that this information is subject to the psychotherapist-patient privilege.

II. **Malmstrom's Final Advisory Guidelines Range Should be 41–51 Months**

A. **The Government Is Not Pursuing the Enhancement for Substantial Disruption of Public or Governmental Functions**

The revised PSR calculates Malmstrom's offense level in the following manner:

| | | |
|---|---|---|
| Base offense level | 12 | § 2A6.1(a)(1) |
| More than two threats | +2 | § 2A6.1(b)(2)(A) |
| Substantial disruption | +4 | § 2A6.1(b)(4) |
| Official victim | +6 | § 3A1.2(b) |
| **Total Offense Level** | **24** | |

PSR ¶¶ 15–24. The government agrees with all but one of these calculations. The government had initially agreed that the four-level enhancement for substantial disruption of public or governmental functions should apply here. After reviewing the factual record, however, the government has concluded that although Malmstrom's barrage of calls and messages surely disrupted Z.B.'s work at the embassy, and inflicted substantial emotional injury on her, there is not a sufficient factual basis to

7

demonstrate the "degree of objectively quantifiable disruption" necessary to make out the enhancement. *United States v. Anwar*, 741 F.3d 1134, 1140 (10th Cir. 2013). The government therefore will not be pursuing this enhancement.

### B. The Official Victim Enhancement Should Apply

The evidence at trial showed that Malmstrom targeted Z.B. solely because she was an employee of the Embassy of Sweden. There was no personal connection between Malmstrom and Z.B. that would explain his campaign of threats and harassment. Rather, in his calls and voicemail messages, with their frequent references to the Swedish government and the king of Sweden, he revealed an animus against the country's government. Unfortunately, it appears that Z.B., as a representative of that government, became the focus of his anger.

As a result, Malmstrom's offense level should be increased by six levels under § 3A1.2(b), because the victim was a government employee, the offense of conviction was motivated by that status, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person). *See* U.S.S.G. § 3A1.2(b). This enhancement "deals with the selection of victims based on their status as government employees." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 153 (2d Cir. 2008).

Malmstrom's claim that the "official victim" enhancement should not apply because Z.B. was an employee of a foreign government is unfounded. The plain language of § 3A1.2(a) makes no distinction between United States and foreign officials for purposes of the enhancement. In light of the reasons for the enhancement,

8

limiting its application only to domestic government officials makes little sense. Targeting a government official because of his or her status as an official threatens not only the individual but also the system of government as a whole. Such potential harm is not diminished simply because the official happens to be a member of a foreign government.

Those courts that have found foreign officials to be within the scope of § 3A1.2 have rejected the distinction Malmstrom advances here. In *United States v. Levario-Quiroz*, 161 F.3d 903 (5th Cir. 1998), the court noted in dicta that the defendant "has not presented a valid reason that U.S.S.C. § 3A1.2 cannot apply if the defendant committed an assault upon a person reasonably recognizable as a law enforcement officer, whether foreign or domestic, during the course of the offense of conviction." *Id.* at 908. And in *United States v. Kim*, No. 03-cr-413 (RPP), 2003 WL 22391190 (S.D.N.Y. Oct. 20, 2003), the court applied the enhancement in a case in which U.N. employees were victims, finding that although such employees were not within the letter of § 3A1.2, the Sentencing Commission would have included them had the fact scenario been presented to them. *Id.* at *5.

Government counsel has found only one case in which a court rejected the application of the § 3A1.2 enhancement when the victim was a foreign official. Although the case did not result in a written opinion, the issue was addressed by the court at sentencing. In *United States v. Thaler*, Case 7:13-cr-00616-VB (S.D.N.Y.), the defendant had pleaded guilty to aiding and abetting the bribery of a public official and conspiring to commit wire fraud and honest services fraud. *See* Sent. Tr. (Doc.

9

181) at 2 (excerpt attached as Exhibit 1). The presentence report recommended an enhancement under § 3A1.2 because the victim was a member of the immediate family of a government officer or employee. *Id.* at 4. The court rejected the enhancement for a number of reasons, the first of which was because the individual identified as the victim for the purpose of the enhancement was not a victim of the offenses of conviction. *Id.* at 30-32.

The court also concluded, however, that it was "not at all persuaded that this official victim enhancement was intended to apply to a foreign official or official's family." *Id.* at 33. In addition to finding the decisions in *Kim* and *Levario-Quiroz* to be unpersuasive, the court concluded:

> [I]t's just a matter of common sense that the Sentencing Commission did not have foreign officials in mind when it drafted this guideline. There's a whole bunch of statutes that make it a crime to assault or harm or do other things to or threaten federal officials. And clearly they had that in mind. There's no question about that. And if they had in mind officials of foreign countries I think they might have mentioned that and they didn't mention it. It's never been mentioned.

*Id.* at 34.

This Court should join the reasoning of *Levario-Quiroz* and *Kim*, and reject *Thaler*. The fact that there are statutes prohibiting assaults and other crimes against federal officials is of no significance, as there are of course several other statutes that make it a crime to assault, threaten or otherwise harm foreign officials. *See, e.g.*, 18 U.S.C. § 112 (assaulting foreign officials); 18 U.S.C. § 878 (threats and extortion against foreign officials); 18 U.S.C. § 1116 (murder or manslaughter of foreign officials); 18 U.S.C. § 1201(a)(4) (kidnapping of foreign official). And the fact that

10

the Commission has not specifically discussed foreign officials does not undermine the plain language of § 3A1.2. Several courts have relied on this same plain language in concluding that the enhancement applies when state or local officials are victims. *See United States v. Alexander*, 287 F.3d 811, 820-21 (9th Cir. 2002); *United States v. Hudspeth*, 208 F.3d 537, 539-40 (6th Cir. 2000); *United States v. Stewart*, 20 F.3d 911, 918 (8th Cir. 1994). The same language controls here, where the victim was working as a consular employee in Sweden's embassy to the United States.

If the Court adopts the guideline calculation recommended by the government, Malmstrom's final offense level is 20. At Criminal History Category III, his advisory guidelines range is 41–51 months.

## III. A Sentence of 46 Months Imprisonment Is Appropriate Here

The government believes that a sentence of 46 months imprisonment is appropriate in this case. Such a sentence takes into account the particular facts and circumstances of this case and comports with the statutory purposes of sentencing.

### A. The Government's Recommended Sentence Reflects the Totality of Malmstrom's Conduct

Multiple aspects of Malmstrom's offense conduct argue for a sentence above the low end of the advisory guidelines range. The three threats for which he was found guilty were only a small part of a sustained campaign of harassing and threatening behavior directed toward the victim. The commentary to § 2A6.1 notes that if the offense involves substantially more than two threatening communications to the same victim, or a prolonged period of making harassing communications to the same victim, an upward departure may be warranted. U.S.S.G. § 2A6.1 cmt. n.4(B).

Here, although the government is not recommending an upward departure, the duration of his threatening and harassing conduct calls for a sentence above the low end of the guidelines, and strongly argues against a downward variance.

In addition, Malmstrom threatened not only the victim herself, but also her children. These additional threats caused significant distress to the victim and made her fear for the safety of her children as well as her own. His sentence should reflect this aggravating fact.

### B. The Government's Recommended Sentence Fulfills the Statutory Purposes of Sentencing

The government submits that a sentence of 46 months is also proper under 18 U.S.C. § 3553(a). In addition to the nature and circumstances of the offense, discussed above, the other statutory factors also support the imposition of the government's recommended sentence.

#### 1. Malmstrom's History and Characteristics

With respect to his history and characteristics, the PSR makes clear that he has a significant mental health history. It seems likely that his mental health issues played a role in his offense conduct. The revised PSR identifies this history as one of several possible bases for a downward variance. PSR ¶ 62. At the same time, however, the PSR notes that he has a substantial history of violent and threatening behavior, and a history of refusing to receive mental health treatment or take prescribed medications. *Id.* These aspects of his history are identified as possible bases for an upward variance. *Id.* Indeed, his criminal history includes several episodes of violence, as described in Paragraphs 28, 29, 30 and 34 of the PSR. The government submits that

on balance, his history and characteristics reflect a continuing danger that must be addressed with a substantial period of imprisonment.

### 2. Seriousness of Offense, Respect for the Law, Just Punishment

The Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). These factors are related. As the court noted in *United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis. July 24, 2008), "[a] sentence that is too lenient depreciates the seriousness of the offense and fails to promote respect for the law. By the same token, a sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect." *Id.* at *3. In this case, Malmstrom's offenses were quite serious. He made multiple death threats to the victim, as well as to her children, as part of a lengthy campaign of threats and harassment. The government submits that its recommended sentence is a just punishment that reflects the offense's seriousness and promotes respect for the law.

### 3. General and Specific Deterrence

The Court also must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(B), (C). These two factors are sometimes said to reflect the needs for general and specific deterrence. *See, e.g.*, *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). With respect to the

former, the government's recommended sentence will send the message that threats of violence are serious and will result in substantial punishment.

With respect to the latter, based on his history of violence, his substantial mental health and substance abuse history, and his refusal to acknowledge his need for treatment, Malmstrom poses a continuing danger to others. As a result, protecting the public from future crimes by him is an important sentencing factor in this case.

### 4.     Training and Treatment

The Court must also consider the need for the sentence imposed to provide Malmstrom with needed training or treatment. See 18 U.S.C. § 3553(a)(2)(D). The government's recommended sentence will provide him with the opportunity to obtain mental health and substance abuse treatment, as recommended by the PSR. It is abundantly clear that he needs such treatment.

### 5.     Sentencing Disparities

The Court must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). The government submits that the guideline sentence it recommends adequately addresses this factor.

## Conclusion

For the foregoing reasons, the government recommends that the Court impose a sentence of 46 months imprisonment followed by three years of supervised release.

    Respectfully submitted,

    HALSEY B. FRANK
    UNITED STATES ATTORNEY


    /s/ Craig M. Wolff
    Craig M. Wolff
    Assistant United States Attorney
    United States Attorney's Office
    100 Middle Street
    Portland, Maine 04101
    (207) 780-3257
    craig.wolff@usdoj.gov

Dated: January 29, 2019

**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2019, I electronically filed the above **Government's Sentencing Memorandum** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

**Robert C. Andrews, Esq.
rob.andrews.esq@gmail.com**

HALSEY B. FRANK
UNITED STATES ATTORNEY

 /s/ Craig M. Wolff
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME  04101
(207) 780-3257
craig.wolff@usdoj.gov